IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RECEIVED + FILED
2021 MAR 18 AM 10: 26
CLERK U.S. BANKRUPTCY COURT
EASTERN DISTRICT
ST LOUIS, MISSOURI

| | |
|---|---|
| In re: Robert J. Ambruster, Inc., )<br>)<br>)<br>Debtor, )<br>) | Chapter 11<br>Subchapter V<br><br>Case No. 20-44289 |

## EXPEDITED MOTION
## TO APPOINT AN OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

Comes Now, Interested Party, Deborah L. Drace, beneficiary shareholder, ("Shareholder"), files this Expedited Motion to Appoint an Official Committee of Equity Security Holders for Debtors. Out of the abundance of caution, Shareholder is filing this Motion under seal.

### INTRODUCTION

1. On 9-3-2020, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Debtor also filed the purported Disclosure Statements, declarations, affidavits, and Addendums submitted by Robert Drace and Angela Jansen, Attorney for the Debtor Chapter 11 Plan of Reorganization. The Disclosure Statements includes, among other things, exhibits which contain a false-representations about inventory, assets, liabilities, officers, real property rights, management and other falsities.

2. Shareholder, is familiar with RJA INC's assets and operations, and immediately understood the Valuation Analysis of 1.2 Million to be in bad faith. After reading portions of the Disclosure Statement and Plan, Shareholder understood that the information contained in the Disclosure Statement was inadequate, inaccurate, and misleading. At the time of filing the petition the real property was listed for 2.9 Million dollars and had a valuation from 1.8 -2.7 Million dollars.

3. On March 8, 2021 and many times before this, Shareholder spoke with Robert Drace, regarding the Bankruptcy filings. Shareholder expressed her surprise at the Valuation Analysis. Shareholder has sent correspondence via email to counsel for the Debtor communicating (i) some of Shareholder's concerns regarding the proposed Plan, Disclosure Statement and Valuation Analysis, and (ii) a request for the Debtors and certain creditors to provide Shareholder specific information regarding the Plan, the Valuation Analysis and certain events leading up to the Bankruptcy filing. These information requests remain largely unfulfilled and counsel for Debtor have either ignored Shareholder's requests or acted in bad faith in this

1

bankruptcy process. They have refused to provide bankruptcy documents, fail to comply with demands for a 2004 Examination, failed to provide accounting and corporate books and certain meeting minutes, communications with debtor attorney by and between others, and has recently submitted false tax returns posing severe tax liabilities on the shareholder among other improprieties.

4. On February 10, 2021, Shareholder filed an Objection to the (I) Confirmation of the Plan of Reorganization, and (II) Objection of Debtors' Disclosure Statements. (the "Objection"). (Docket No. 102) In the Objection, Shareholder asserted that (i) the bankruptcy filing, plan of reorganization, disclosure statement and valuation analysis are in bad faith, (more specifically, (a) the Valuation Analysis is not credible and in bad faith, (b) the conduct of the Debtors leading up to the Bankruptcy, particularly with respect to the "acts and conduct" of Robert Drace was is in bad faith, and (c) that the Restructuring Agreement and Plan of Reorganization are in bad faith); and that (ii) the disclosure statement is inadequate, inaccurate and misleading.

5. Since that time, Shareholder has participated in preliminary discovery requests including document production/review and has been available to help. While discovery has not yet commenced and the conduct of Debtor and its legal counsel constitutes improper conduct, Shareholder's assertions in the Objection have been validated. For example, it has been discovered that: i) The financial projections and valuation analysis provided in the Disclosure Statement are in bad faith. ii) RJA INC., under Robert Drace, and its legal counsel will not provide basic information supporting the Debtors' own statements in the Disclosure Statement (likely because the information does not exist and the statements provided in the Disclosure Statement are inadequate, inaccurate, and misleading) and have engaged in "dirty games" manipulating search dates and custodians to restrict the production of responsive communications. In fact, Angela Jansen has intentionally misled Shareholder in a meet & confer engagement on 8/31/2020 indicating that Robert and shareholder and Deborah were going to work together every step of the way to ensure a smooth bankruptcy procedure would take its course. Counsel was briefed on certain facts which include but are not limited to Robert being removed as president on 8/10/20 and to possibly restructure as a LLC due to removal of president and look into rental options for someone to rent the building, and did provide certain obligations including her wages or unknown factors about it, and was advised the beneficiaries would still receive proceeds from transfer of 6629 Clayton Road which Angela drafted and orchestrated by quit claim with implying the trust, the proceeds would still be returned to FBO Deborah Drace Jane Beard Trust without vesting first to other creditors according to the first real

2

estate contract with pace properties from 2019 . Also, while winding down operations while seeking a buyer for the real estate, it was agreed to have Calvin Whitaker take the funeral calls and work with the debtor on how to contact the preneed clients to allow them to make decisions regarding their contracts. There was NO discussion to just sell them off to the highest bidder!!! As was later discovered attorney Angela had planned to sell to the highest bidder these preneed contracts.  Shareholder is extremely concerned and is not even sure this would be legal as the debtor preneed clients are the actual owners of the contracts and debtor has no rights to sell them to the highest bidder as Angela only recently disclosed was her intention.  When Shareholder and or other Director challenged the statement and requested certification, Angela, changed her position and or silenced the matter.  In fact, debtor has changed their position multiple times to make the situation worse than it ever needed to be and contrary to best interests of shareholder.  She intentionally made the entire procedure complex because she took advice from creditor James Cole so as to accept and condone influences as a insider to benefit and unjustly enrich themselves without exposing their malfeasance and to carry out a scheme which needs to be exposed as no one is above the rule of law.

6. While trying to listen to certain attendees at a 341 meeting which was hard to understand and hear at the time, Shareholder has reviewed the roster of attendees and realizes she was the only party present with an interest aligned with that of genuine interests to protect equity holders whereas it was never asked who the Trustees of the Jane Beard Sub Trusts were or anything regarding trustees and beneficiary shareholders. Shareholder has made it clear that she is representing her own interests and not those of the equity class. As such, it is obvious that no one is protecting the interests of the equity holders, notwithstanding the significant value to equity holders in the estate. It should be noted shareholder discovered a call occurred between debtor counsel and subchapter v trustee, Coffin, on Oct 12, 2020, whereas it was purported to be about Deborah's attendance at the 341 meeting the next day.  Deborah has not been able to see if the call was incoming or outgoing to the subchapter v trustees, conversation according to his billing.  This is important because it's a fact, the debtor attorney was attempting to influence Deborah NOT to attend the 341 meeting the next day and had not provided her a copy of the amended petition so as to afford shareholder ability to be prepared for this meeting and intentionally hindered Deborah every step of the way.  It is unknown why there was such a interest in "Deborah" so as to be the only topic discussed one day before this meeting and failure to disclose the information has only peeked suspicion. One can only conclude "something stinks".  Deborah was denied a voice at the 341 creditors meeting.

7. It is necessary and appropriate to appoint an equity committee to represent and protect the interests of RJA, Inc shareholders and beneficiaries of FBO Deborah Drace Jane Beard Trust. And, it is clear the interests of RJA, Inc shareholders are in great need of protection because shareholder has been denied due process and a voice. As described in the Objection, and validated in limited discovery, there is significant evidence that the Debtors, as well as its legal and financial advisors, are operating in bad faith. There is also evidence to suggest that creditors have also acted in bad faith by communicating directly with debtor counsel and have engaged in a scheme to oppress beneficiary shares of Shareholder and to create inequality contrary to grantor intent "as levers to bend the bankruptcy process toward [their] own strategic objective" of acquiring the debtor proceeds and "not toward protecting claims or persons who may have debts owed to them in priority." (***In re DBSD,*** 624 F. 3d at 104). For these reasons, Shareholder respectfully requests that the Court order the U.S. Trustee to appoint of an official committee of equity security holders for RJA, Inc to be a committee of the trustees and beneficiaries and heirs at law for Jane Beard Trust Sub Trusts and Shareholder.

## BASIS FOR EXPEDITED RELIEF

8. As this Court is aware, the Debtors are trying to jam "the plan" bankruptcy through the Court very quickly all of a sudden now. The Plan's confirmation date was set and reset without Shareholder's participation and without even Board of Directors quorum vote or" input "whatsoever to drafting or approving the plan or the amended plan. Angela will not release her phone records and email and text communications either as requested by the shareholder who has a right to these disclosures.

9. Shareholder has been engaged in discovery with Debtors and has also requested discovery from certain creditors and the debtor, Robert Drace and others. Debtors, under Robert Drace alone and Angela Jansen and Coffin are acting in bad faith and certain creditors have taken the approach simply not to provide anything in response to Shareholder's narrow requests. Shareholder's narrow requests have been outstanding since 2018 if not before – and have been asked for repeatedly since filing this petition and again within hours of hearing about the misrepresentations during the 341 meeting. Time is limited to analyze and draft a new Plan and Disclosure Statement, investigate potential claims, assess the Debtors' value or address voting rights and protections, which have already been impinged under the schedule. This is especially true if Debtors and creditors will not produce information responsive to proper requests. Given the compressed confirmation timeline, a genuine need exists justifying consideration of this

Motion no later than immediately to avoid substantial prejudice to the Shareholder and potential equity committee and its constituencies.

## SUBSTANTIVE MOTION

10. Section 1102(a)(2) of the Bankruptcy Code provides that "[o]n request of a party in interest, the court may order the appointment of ... committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee." 11 U.S.C. § 1102(a)(2) (emphasis added). Section 1102 does not define "adequate representation," but prior precedent interpreting Section 1102, generally consider the factors set forth: (i) whether the debtor is likely to prove solvent; (ii) whether equity is adequately represented by stakeholders already at the table; (iii) the complexity of the debtors' cases; (iv) the likely cost to the debtors' estates of an equity committee; *In re Pilgrim's Pride Corp.,* 407 B.R. 211, 216, n. 13 (Bankr. N.D. Tex. 2009). This list is neither exhaustive nor mandatory.

11. Official committees of equity security holders have been appointed in chapter 11 cases in court, district and circuit. See, e.g., *In re Energy XXI Ltd.,* No. 16-31928 (Bankr. S.D. Tex. 2016); *In re Pilgrim's Pride Corp.,* Case No. 08-45664 (Bankr. N.D. Tex. 2008).

12. While there is compelling evidence of solvency as discussed below in this matter, notably, courts has found that the likelihood of solvency is not necessary for the appointment of an equity committee. See *In re Energy XXI, Ltd., et al.,* No. 16-31928 (Bankr. S.D. Tex. June 15, 2016) Tr. of Hr'g on Mot. to Appoint Official Committee of Equity at p. 169, Docket No. 532 (Isgur, J.) In lieu of a finding of likely solvency, the court in *Energy XXI* found factors including: third-party releases of shareholder claims against insiders, unfair discrimination against shareholders, alleged misrepresentations to shareholders, and discrepancies in the pre-petition and the post-petition valuation of the enterprise value, warranted the appointment of an equity committee. See *Energy XXI* Tr. at pp. 161-169.

13. The *Pilgrim's Pride* factors, when viewed in light of the facts herein and subsequent case law and the *Energy XXI* proceedings in this court, weigh heavily in favor of the appointment of a committee of equity security holders.

Likelihood of Solvency:

14. In general, the applicable legal standard is not whether the Debtors are solvent, but rather whether the Debtors "appear to be hopelessly insolvent." *In re Williams Commc'ns Group,*

*Inc.,* 281 B.R. 216 (Bankr. S.D.N.Y. 2002); *In re Emons Indus., Inc.,* 50 B.R. 692, 694 (Bankr. S.D.N.Y. 1985). Thus, an equity committee would theoretically be appropriate even if RJA, Inc appeared insolvent. See *In re Wang Labs., Inc.,* 149 B.R. 1, 7 (Bankr. D. Mass. 1992) (appointing an equity committee even where the debtor had negative book equity of several hundred million dollars). "[T]here is no clear litmus test" in determining a debtor's solvency. *Williams Commc'ns*, 281 B.R. at 220. Instead, it is a "practical conclusion, based on a confluence of factors." Id. at 221. *In re Pilgrim's Pride*, the court did reference that "[t]he value of Debtors will ultimately be determined based on their ability to generate cash flow." 407 B.R. at 216-17. Ambruster Chapel, RJA, Inc, the real property, has a significant ability to create cash flow under the right management.

15. Attempting to skew the solvency issue through a bad faith Valuation Analysis, Debtors have, together with their legal and financial advisors, manipulated the process to arrive at a valuation of 1.2 million. Of course, this valuation is intentionally aimed at promoting the improper cram-down being pursued in the Plan to allow for a quick sale of the property eliminating protection to shareholder. The Valuation Analysis is a farce and RJA, Incs own public disclosure and internal analysis, analysis that was provided to the certain creditors in developing the Plan, prove it. Angela on behalf of the debtor has clearly stated the company is solvent and that it can fund the plan and even if there is "no money" Robert will fund the plan. Robert agreed to pay the debt prior to filing chapter 11 anyway so this was not a genuine concern as he has many assets available to fund the plan.

16. As part of reporting process, RJA, Inc engaged, a third-party, independent appraisal firm, to prepare reserve estimates for all of the Company's assets in approx. 1999 and in 2007 and in 2016 which are included in RJA, Inc corporate records. In the reports, RJA, Inc declares value well over 1.6 million dollars and has increased in value each and every year and not depreciated until their "purported" valuation today. The value is also shown as two real estate contracts have been presented to the debtor one of which was just 6 months prior to filing for bankruptcy and was 1.8 Million dollars. It is unknown why the debtor did not disclose he was behind on tax and mortgage payments so as to make an informed decision and accept this offer.

17. Further, in its public presentations here, while only purported, emphasis added, RJA, Inc or the trust touts its significant inventory which really has appraisals valued over 500,000 dollars in appraised assets, which is significant difference to claims of the debtor. The Debtors and their advisors ascribe absolutely no value to some significant assets or have concealed them

6

altogether and have converted other assets of trust of less value as their purported "inventory". However, in discovery it has been revealed that these assets have significant value and are believed to have been fraudulently converted one way or another as they have made things complicated intentionally to carry out their scheme which shareholder can expose if provided her committee.

18. With "actual" real debt of less than 300,000 if contested creditors are removed, one can clearly see that the solvency of the Debtor is not accurately described as a possibility, but rather as a probability, a likelihood, or a near certainty. There is significant value here to equity holders and without proper representation, the creditors and certain insiders are trying to steal that value.

19. Similarly, the projections provided by RJA, Inc., in the Disclosure Statement (and used in the Valuation Analysis) also lack credibility. The only projections provided to this court in the Disclosure Statements are those of made up by Robert Drace and Angela Jansen and have no input from shareholder or Board of Directors' quorum. In fact, they lied and said one of the board members quit or resigned and it is still listed this way on their petition and this court has not pursued to hold them liable for lying under perjury. Angela only sustained shareholder objection because debtor saw an opportunity to try to use influence over this certain director to go against this shareholder and try to influence director, Whitaker, to keep Robert as President as part of the bankruptcy plan. True financial projections were not provided to this court and there has been no investigation as to what happened to the MONEY. Rather, it appears the Debtors are marketing one business plan solely to keep jurisdiction in the State court and solely to benefit Robert Drace and certain creditors who otherwise are not owed these debts. whereas, to get Consenting Creditors to support the plan thru a ballot system when a creditor committee was not formed as this is a subchapter V plan not a straight chapter 11 case and there is supposed to be consensual plan without the cost of a creditor committee. It appears This is to balloon expenses of the attorney and chapter V trustee and to dumb-down valuation – this conduct is improper and in bad faith to get the case off their plate and to "get paid" quickly, making everything they have said from September 3 to present basically Moot but have wasted significant time and resources trying to bribe and alter their state-of-affairs almost daily. Had it not been for shareholder raising genuine concerns as to the debtor under domination tactics of Robert Drace in questions of honesty and integrity, the bogus plan would be pushed thru which really is not a plan at all and is just a means to an end but an inflated end to the benefit of

7

Robert and others using the legal maneuver to unjustly enrich outside of this procedure and to divert the remainder proceeds into another legal proceeding in state civil court. It is ridiculous.

20. If there is significant developed and undeveloped value in the assets of the company, what happened? How do all the funds just disappear? The Disclosure Statement and the Declarations of the debtor attempt to place the blame on events of Covid that have little or no significance to the value of the assets and ability of funeral practices. In fact, funeral business had a higher likelihood to increase business because people have been rapidly dying during Covid and at minimum the alternative cremation marketing should have been increased during this time or other memorial zoom meeting gatherings could be marketed where debtor could offer memorial streaming services and get ahead of the game not behind it. It is noteworthy that Debtors' counsel has obstructed the efforts of Shareholder to properly investigate the statements of the Debtors and its purported President and Debtor has not allowed shareholder to contribute ideas to help increase marketing and make it profitable. And, given the rush with which the Debtors are seeking to conclude a transaction "1.2 Million offer" NOW, with such urgency, is skeptical and contrary to all statements they have made thus far as with certain creditors and the insider releases that are embodied in their proposed plan, healthy skepticism is warranted for any explanation that they may offer the Court at this time. The answer is likely that either (1) the value has not disappeared or (2) the creditors, along with certain insiders are trying to steal the value from other stakeholders with this improper bankruptcy. As this court found in *Energy XXI*, "something stinks." (*Energy XXI* Tr. at p. 164.)

21. In either event, equity holders have significant economic interests that need to be protected and this can best be accomplished through appointment of an equity committee of trustees and heirs at law of a Trust.

**Adequate Representation of the Equity Holders:**

22. Shareholder has requested and engaged in targeted discovery which Debtors' counsel has unnecessarily obstructed. Shareholder is the only equity holder raising concerns because the other have a conflict of interest. Further, Shareholder is not representing the equity class. An equity committee should be appointed because the interests of RJA, Inc's shareholders are not otherwise adequately represented in these chapter 11 cases. Without an equity committee, there is no constituency responsible or appropriately incentivized to protect, maintain, and maximize the positive value of the equity of Robert J. Ambruster, Inc.

8

23. "While it is true . . . that shareholders and unsecured creditors often have common interests . . ., when it comes to valuation and determination of future capital structure for plan purposes. . ., their agendas are likely to be very much at odds." *In re Pilgrim's Pride,* 407 B.R. at 217, n.17. As set forth above, it is highly likely that RJA, Inc., is solvent the value of its assets. The debtor appears to be pursuing a strategy aimed at attacking: i) the valuation, and ii) a potential fraudulent conveyance, and a fabricated unlawful plan. While perhaps an interesting legal exercise, there is no practical economic or business application to what is really taking place in this bankruptcy. As such Robert Drace's and other's interests are more closely aligned with the other creditors rather than those of the equity holders creating conflict of interest. Their hope would be to push the valuation as high as possible without providing value to the Shareholder, specifically Deborah Drace Trust beneficiary interests, equity holders, which would dilute their economics. Board and Management and trustees and beneficiaries are caused to be conflicted.

24. *In re Pilgrim's Pride* succinctly sets forth the general principles on the issue, finding that: [w]hile it is unquestionably true that Debtors' officers and directors have a duty to maximize Debtors' estates to the benefit of shareholders as well as creditors . . . the reorganization process is not so simple that ensures shareholders are adequately represented by even equity owning management. The principal concern of Debtors and their managers ... must be preservation of Debtors' going concern value and their successful emergence from chapter 11 sub chapter V. That will occur through confirmation of a plan of reorganization. Confirmation of a plan, in turn, is heavily dependent upon Debtors reaching an accord with the shareholders and the [lenders]. Given Code § 1129(a)(10), confirmation of a plan will likely require the support of the unsecured creditors or the [lenders]. As the courts has had occasion to note . . . it is hardly likely that the [lenders] will be disposed to value Debtors so liberally that equity may be sure to receive its due. *Pilgrim's Pride,* 407 B.R. at 218 (emphasis added). but subchapter v can pursue a plan on its own consensually.

25. More to the point, RJA, Inc management, solely rests on wrongful unlawful actions of Robert Drace, have already demonstrated they support the Plan and are more than willing to leave RJA, inc shareholder out in the cold. Indeed, Robert alone, approved the filing of the Plan as part of the bankruptcy filing and are not willing to consider alternatives. Notably, the Plan provides excessive proceeds the benefit of Robert Drace and to lawyers and others as it was agreed to contest the fees of WasingerDaming, LC law firm, Robert unlawfully engaged them on behalf of the corporation for his unjust enrichment. At best, the actions of Angela Jansen and Robert Drace, related to this bankruptcy are in bad faith, Shareholder also has concerns there is

9

significant evidence of securities and IRS and Trust fraud in the activities leading up to the filing. The inherent conflict of interest is apparent. How can Robert Drace and Angela Jansen, James Cole, possibly look out for this equity shareholder when they are so busy looking out for themselves? They have flip flopped so many times here. Angela Jansen recently just scrambled into the court docket filing something that 1.2 Million dollars was "**too low**" a price and now she is threatening by undue influence directed to the directors to sign the real estate contract for" 1.2 Million dollars" and has given notice of her withdraw Monday 3/15/21 because for several purported reasons like one being the Shareholder referred to them as Animals. Shareholder admits to possibly the word animals, but it was meant in the context to show predatory character and domination control like in a Pack of wolves this to get rid of the weak or oppress shares. The Bricks and Mortar did not hire Angela, A stone did not walk into her office and say File Bankruptcy for me "the Stone" Angela and Robert have designed this bankruptcy to benefit themselves and to make it insolvent intentionally and they have acted like Animals, Predators of their own flesh and blood in Robert's case. Angela has referred to Shareholder as Angry. Angry is not the Word. The building is a legacy built by her forefathers and has great heritage and is not just an ordinary brick and mortar establishment. It is vulture's like her who have wasted resources and done absolutely nothing to protect beneficiary interests (shareholder). Other than to cause a complete waste of a primary asset by her unprofessional conduct.

26. This case cries out and implores this Court to take immediate action for the appointment an equity committee of trustees, beneficiary, and heirs at law even if it means appointing guardian ad litem for shareholder children interests. The Plan cancels potentially all equity interests of Shareholder on purpose and potentially releases all claims against the insiders who are supporting it by using this court adjudication to bar future claims. It is only fair play that the equity interest holders receive adequate representation so that their interests can be protected, and their voices heard.

**Complexity of the Case:**

27. It is indisputable that this has **unnecessarily** become a complex case. With multiple classes of creditors and potentially and intentionally leaving people off the creditor matrix on purpose including FBO Deborah Drace Jane Beard Trust and beneficiaries and trustees and shareholders children and clearly have intentionally left Jeffrey Mize off the creditor matrix which has led to adversary actions and intentionally left off Deborah Drace's actual claim for wages, her counter-claim in a State Probate Cause and added a fabricated debt of the corporation

purported to be owed to Robert of over 124,000 dollars., and a fabricated debt owed to danka Brown for 25,000 dollars. Debtors' own counsel (Angela Jansen) has been unwilling to cooperate even with the most basic elements of putting together a workable Plan and doing things as agreed when engaging her in August 2020, proper representation is a must and Deborah relied on her trust. Angela has even dictated specifics how she is to be addressed to answer questions in that she required numbered sentences and other nuisances just to talk to her yet we paid her almost 20,000 dollars so any reasonable person would expect they could ask a question to one they paid so much money to.  Angela has told people I have been escorted out of the court due to my behavior and that I am incapable to run a business and lied about my integrity only to try to slander me and cover up her own misconduct. Angela also has stated Deborah won't be able to get anyone to represent her in this town but is not disclosing the fact she has tried to sabotage this by reaching out to potential lawyers Deborah was going to hire to cause a conflict intentionally so as to obstruct ability to negotiate to hire the lawyer. Angela does not even know shareholder enough to pass judgement whether shareholder could operate" a business ". The debtor attorney is completely unprofessional and has shown undue bias and taken advantage of opportunity to pit a brother against his sister instead of reaching out a hand to help mend this divide.

**Cost to the Debtor:**

28. Although all parties herein, along with the Court, should remain mindful of concerns regarding the additional expense associated with the formation of an equity committee, but "[c]ost alone cannot, and should not, deprive . . . security holders of representation." ***In re McLean Indus., Inc.,*** 70 B.R. 852, 860 (Bankr. S.D.N.Y. 1987). Instead, the Court should employ a balancing test to weigh the cost of an equity committee against concerns regarding adequate representation. See, ***e.g., In re Pilgrim's Pride, 407 B.R. at 221; Williams Commc'ns,*** 281 B.R. at 220. Once the need for adequate representation is established, "the burden shifts to the opponent of the motion [to appoint an official equity committee] to show that the cost of the additional committee sought significantly outweighs the concern for adequate representation and cannot be alleviated in other ways." ***In re Beker Indus. Corp.,*** 55 B.R. 945, 949 (Bankr. S.D.N.Y. 1985). With a lack of transparency on the part of Debtors Robert Drace and its advisors.  But it should be noted, there may be NO COST as the persons are beneficiaries and can represent themselves for virtually little to no cost except for maybe the cost of guardian ad litem.

11

29. The Court can certainly impose such restrictions and conditions it deems necessary to avoid unnecessary duplication of work and to quell any concerns about rampant billing by any counsel or professionals to the equity committee. That was the approach adopted in *Pilgrim's Pride*. See *In re Pilgrim's Pride Corp.,* 407 B.R. 211, 221-222 (Bankr. N.D. Tex. 2009) (court's ability to limit functions of an equity committee, request a budget, and review retention and fee application satisfied concerns regarding cost associated with equity committee). Here, the benefit of an equity committee to protect the interests of RJA, INC estate and its constituents clearly outweigh the cost as right now anything is better than how the debtor is running now and real due process has not been afforded to make the debtor solvent.

**Composition of the Equity Class:**

30. Shareholder believes the U.S. Trustee will not have any issue locating interested shareholders and forming an equity committee with the trustees and beneficiary and heirs at law as this corporation is comingled in a simple trust.

## CONCLUSION

31. The Debtor seek to wipe out RJA INC' s equity to this shareholder, and grant sweeping releases and proceeds in favor of the corporation's insiders, Robert Drace , and advisors and attorneys, to the detriment of the equity shareholders, and with little to notice to the equity interest holders as just as of Friday March 11, 2021, debtor thru attorney Angela Jansen is pressuring for Directors to sell the property for 1.2 Million Dollars but that is not really the detriment as the detriment is in the fine writing of the real estate contract and the Plan which abuses the legal process to keep litigation matters under the jurisdiction of Missouri which is improper thru this procedure as Jurisdictional issues present here as it is and the court has refused to address this as a concern. The appointment of an equity committee is necessary to protect the rights and interest of equity shareholders and Shareholders respectfully requests the court direct the U.S. Trustee to appoint a committee of equity shareholders consisting of Deborah and beneficiaries, trustees, and heirs at law and to allow more time to confirm the plan and amend the plan and to temporarily issue a restraining order on the debtor to make any further decisions without the input of Shareholder so as distributions are equal or in favor of FBO Deborah Drace Jane Beard Trust as the value is far below market value and shareholder should be granted the difference of the value of significant loss due to actions of others totally out of her control who have only obstructed her good faith efforts to save a legacy intended for her bounty .

## PRAYER

Wherefore, for good cause, premises considered, Shareholder Deborah L. Drace prays and requests this Court to: (i) grant this Motion; (ii) enter an order directing the U. S. Trustee to appoint an official committee of equity holders; and (iii) grant shareholder such other relief to which will allow her to protect her beneficiary shareholder interests, justly entitled, both at law and equity.

Respectfully submitted,

*Deborah L. Drace*

Deborah L. Drace, Movant, Pro se

Case 20-44289   Doc 172   Filed 03/18/21   Entered 03/18/21 11:36:50   Main Document
Pg 14 of 17

## CERTIFICATE OF SERVICE

    I certify that a true and correct copy of the foregoing document "Expedited Motion of the Appointment of Equity Committee" was submitted on the 13th day of March 2021, to the United States Bankruptcy Court, and should be served on the parties in interest via e-mail by the Court's CM/ECF System as listed on the Court's Electronic Mail Notice List.

    I certify that a true and correct copy of the foregoing document was submitted to the United States Bankruptcy Court, and has been served by Regular United States Mail Service, first class, postage fully pre-paid, and/or electronic email delivery addressed to the parties listed below on the 13th day of March, 2021.

*Deborah Drace*
Deborah L. Drace, Movant, Pro Se
7635 W. Shore Dr.
Egg Harbor, WI. 54209
(920) 868-3333
ddshowmesports@gmail.com

CC:

| | |
|---|---|
| Robert J. Ambruster, Inc.<br>6633 Clayton Rd.<br>St. Louis, Mo. 63117<br>*Debtor* | Angela Redden-Jansen, Attorney<br>3350 Greenwood Blvd.<br>Maplewood, Mo. 63143<br>*Attorney for Debtor* |

Trustees:

Stephen D. Coffin, Subchapter V Trustee
The Small Business Law Center
2705 St. Peters-Howell Rd. Ste.# A
St. Peters, Mo. 63376

Joseph Richard Schlotzhauer, Asst. U.S. Trustee
United States Trustee Program
111 So. 10th St., Ste. 6.353
St. Louis, Mo. 63102

Paul A. Randolph, Asst. U.S. Trustee
United States Trustee Program
111 So. 10th St., Ste. 6.353
St. Louis, Mo. 63102

Secured/Non-Secured Creditor:

Ameren UE  
Bankruptcy Desk MC 310　　　　　　　　　　　Janie S. Hovis – jhovis@ameren.com  
PO Box 66881  
St. Louis, Mo. 63166

Batesville Casket Company  
PO Box 644559  
Pittsburg, Pa. 15264-4559

Bernard and Patricia Elkin  
4468 Forder Ridge Rd.  
St. Louis, Mo.63129

Citizens National Bank of Greater St. Louis　　steve@eckelkampkuenzel.com  
c/o Steven T. Hart  
7305 Manchester Rd.  
St. Louis, Mo. 63143

Crescent Memorial  
4975 W. Main St.  
Tupelo, Ms. 38801

Criswell Casket Co.　　　　　　　　　　　　　Thomas Adamczyk- tadamczyk@matz.com  
c/o Matthews International  
2 North Shore Center  
Pittsburg, Pa. 15212

Deborah L. Drace　　　　　　　　　　　　　　ddshowmesports@gmail.com  
d/b/a Ambruster Great Hall Events  
7635 W. Shore Dr.  
Egg Harbor, Wi. 54209

Jeffrey M. Mize  
7635 W. Shore Dr.  
Egg Harbor, WI. 54209　　　　　　　　　　　ambrustergreathall@gmail.com

JP Morgan Chase  
Robertson, Anschutz, & Schneid, P. L.  
6409 Congress Ave.  
Boca Raton, Fl. 33487

JS Paluch Co. Inc.  
PO Box 2703  
Schiller Park, IL. 60176

LPI  
PO Box 510817  
New Berlin, Wi. 53151-0817

| | |
|---|---|
| Missouri American Water<br>PO Box 578<br>Alton, IL. 62002 | csc.bankruptcy@amwater.com |
| Missouri Department of Labor & Ind. Rel.<br>PO Box 475<br>Jefferson City, Mo. 65105 | |
| Republic Service<br>PO Box 9001099<br>Louisville, Ky. 40290-10099 | |
| Sams Club MC/SYNCB<br>PO Box 960016<br>Orlando, Fl. 32896-0016 | gecsedi@recoverycorp.com |
| Spire<br>Drawer 2<br>St. Louis, Mo. 63171 | LGCBankruptcyLegal@spireenergy.com |
| The National Directory of Mortuaries<br>PO Box 73<br>Chagrin, Oh. 44022-0073 | |
| Thomas B. Hayes<br>11647 Gravois Rd., Ste. #100<br>St. Louis, Mo. 63126 | tom@hayeslawstl.com |
| Travelers Insurance<br>J. Thomas Company, Inc.<br>800 Market St., Ste. #1655<br>St. Louis, Mo. 63101 | |
| Chase Card Member Services<br>PO Box 6294<br>Carol Stream, IL. 60197-6297 | David Levy – chasepocnotification@rasflaw.com |
| Division of Employment Securities<br>PO Box 3100<br>Jefferson City, Mo. 65102 | |
| Internal Revenue Service<br>PO Box 7346<br>Philadelphia, Pa. 19101-7346 | sbse.cio.bnc.mail@irs.gov |
| Missouri Department of Revenue<br>PO Box 475<br>Jefferson City, Missouri | Joann Talluer – joanne.talluer@mo.dor.gov |

16

Missouri Funeral Directors & Embalmers        profreg@pr.mo.gov
1757 Woodcliff Dr., Ste. # 202
Jefferson City, Mo. 65109

MSD                                             Karen McDowell – kmcdow@stlmsd.com
PO Box 437
St. Louis, Mo. 63166

St. Louis County Collector of Revenue           Robert Fox – rfox@stlouisco.com
41 S. Central Ave.
St. Louis, Mo. 63105

Hydro Chemical
520 Commerce Dr.
Lansdowne, Pa. 19050-3076

Carmody Macdonald, PC                           Thomas Riske – thr@carmodymacdonald.com
120 So. Central Ave., Ste.# 1800
St. Louis, Mo. 63105

WasingerDaming, LC                              jcole@wasingerdaming.com
1401 So. Brentwood Blvd. Ste. # 875
St. Louis, Mo. 63144

Robert C. Drace                                 midcountystl@yahoo.com
6633 Clayton Rd.
St. Louis, Mo. 63117

Danka Brown                                     unavailable001@yahoo.com
6614 Clayton Rd. #122
St. Louis, Mo. 63117